IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MANUEL R. FLORES, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 5:16-CV-00130 |
| | § | |
| THE STATE OF TEXAS, GREG | § | |
| ABBOTT, In his Official Capacity as | § | |
| Governor of Texas, | § | |
| *Defendants.* | § | |

## <u>DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(c)</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ..................................................................................... 1

FACTUAL BACKGROUND ....................................................................... 2

    I.    STATUTORY FRAMEWORK ........................................................ 2

    II.   PLAINTIFF'S PETITION ............................................................. 4

SUMMARY OF ARGUMENT.................................................................... 5

ARGUMENT AND AUTHORITIES........................................................... 6

    I.    PLAINTIFF'S SUIT SHOULD BE DISMISSED BECAUSE
        HE HAS FAILED TO ESTABLISH HIS STANDING
        TO SUE ...................................................................................... 6

        A.    Plaintiff Cannot Demonstrate the Existence
              of an Actual, Concrete Injury ............................................ 7

        B.    Plaintiff's Purported Injuries Are Not Traceable to
              Defendants or Likely to be Redressed by the
              Relief Sought ...................................................................... 9

        C.    Prudential Considerations Counsel Against
              Plaintiff's Standing ......................................................... 11

    II.   ALTERNATIVELY, PLAINTIFF'S PETITION SHOULD BE
        DISMISSED FOR FAILING TO ASSERT ANY VIABLE
        CONSTITUTIONAL CLAIMS. .................................................. 12

        A.    The Governor Is Immune from Liability for
              *Ultra Vires* Claims. ......................................................... 14

        B.    Plaintiff Has Not Stated an Actionable Equal
              Protection Claim. ............................................................. 16

|   | 1. | Plaintiff fails to identify a suspect classification or fundamental right | 17 |

|   | 2. | Plaintiff offers no facts to suggest that the Border Exemption would fail rational basis review | 19 |

| C. | | Plaintiff Cannot Establish a Preemption Claim | 21 |

|   | 1. | Plaintiff lacks a right of action to support his Supremacy Clause claim | 22 |

|   | 2. | Even if Plaintiff has a right of action for his preemption claim, he has not alleged facts to state a viable claim. | 24 |

| D. | | Plaintiff Has Not Stated a Right to Privacy Claim. | 27 |

CONCLUSION ................................................................ 28

CERTIFICATE OF SERVICE .......................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ...................................................................................... 23

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
  526 U.S. 40 (1999) ........................................................................................ 27

*Arbaugh v. Y & H Corp.,*
  546 U.S. 500 (2006) ........................................................................................ 7

*Arizona v. United States,*
  132 S. Ct. 2492 (2012) ............................................................. 24, 25, 26, 27

*Armstrong v. Exceptional Child Ctr., Inc.,*
  135 S. Ct. 1378 (2015) ................................................................................. 22

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................... 13, 18, 28

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler,*
  178 F.3d 350 (5th Cir. 1999) .................................................................. 11, 12

*Barrows v. Jackson,*
  346 U.S. 249 (1953) ..................................................................................... 12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................ 13, 19

*Bell v. Low Income Women of Tex.,*
  95 S.W.3d 253 (Tex. 2002) .......................................................................... 21

*City of Cleburne v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985) ..................................................................................... 16

*City of El Paso v. Heinrich,*
  284 S.W.3d 366 (Tex. 2009) ................................................................... 15, 16

*Clapper v. Amnesty Int'l USA,*
  133 S. Ct. 1138 (2013) ............................................................................ 7, 8, 9

*Creedmor-Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality,*
  307 S.W. 3d 505 (Tex. App.--Austin 2010, no pet.) ................................... 15

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000).................................................................. 24, 25

*Davis v. Passman,*
    442 U.S. 228 (1979).......................................................................... 22

*DeCanas v. Bica,*
    424 U.S. 351 (1976).......................................................................... 26

*Delta Commercial Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council,*
    364 F.3d 269 (5th Cir. 2004)............................................................... 7

*Doe v. MySpace, Inc.,*
    528 F.3d 413 (5th Cir. 2008)............................................................. 13

*Edelman v. Jordan,*
    415 U.S. 651 (1974).......................................................................... 14

*Ex parte Young,*
    209 U.S. 123 (1908)............................................................. 10, 14, 23

*Fenner v. Boykin,*
    271 U.S. 240 (1926).......................................................................... 23

*Ferguson v. Bank of N.Y. Mellon Corp.,*
    802 F.3d 777 (5th Cir. 2015)............................................................. 13

*First Am. Title Ins. Co. v. Combs,*
    258 S.W.3d 627 (Tex. 2008).............................................................. 21

*Fla. Lime & Avocado Growers, Inc. v. Paul,*
    373 U.S. 132 (1963).......................................................................... 25

*Green v. Mansour,*
    474 U.S. 64 (1985)............................................................................ 15

*Harris Cnty., Tex. v. MERSCORP Inc.,*
    791 F.3d 545 (5th Cir. 2015)............................................................. 24

*Hebert Abstract Co. v. Touchstone Props., Ltd.*
    914 F.2d 74 (5th Cir. 1990)............................................................... 13

*Heller v. Doe,*
    509 U.S. 312 (1993)................................................................ 16, 20, 21

iv

*Hines v. Davidowitz,*
   312 U.S. 52 (1941)......................................................................... 25

*Home Builders Ass'n of Miss., Inc. v. City of Madison,*
   143 F.3d 1006 (5th Cir. 1998)...................................................... 6

*In re Great Lakes Dredge & Dock Co. LLC,*
   624 F.3d 201 (5th Cir. 2010)......................................................... 13

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,*
   818 F.3d 193 (5th Cir. 2016).......................................................... 28

*Johnson v. Rodriguez,*
   110 F.3d 299 (5th Cir. 1997)......................................................... 18

*Kentucky v. Graham,*
   473 U.S. 159 (1985)....................................................................... 14

*Krim v. pcOrder.com, Inc.*
   402 F.3d 489 (5th Cir. 2005)......................................................... 6

*Larson v. Valente,*
   456 U.S. 228 (1982)....................................................................... 11

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)................................................................ 7, 8, 9

*Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.,*
   489 F.3d 669 (5th Cir. 2007)......................................................... 28

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit,*
   369 F.3d 464 (5th Cir. 2004)................................................... 4, 13

*Mastronardi v. Wells Fargo Bank,*
   No. 15-11028, 2016 WL 3549007 (5th Cir. June 29, 2016) ................... 28

*McGowan v. Maryland,*
   366 U.S. 420 (1961)....................................................................... 20

*Medtronic, Inc. v. Lohr,*
   518 U.S. 470 (1996)................................................................ 25, 26

*Meyers ex rel. Benzing v. Texas,*
   410 F.3d 236 (5th Cir. 2005)......................................................... 15

*Morris v. Livingston,*
  739 F.3d 740 (5th Cir. 2014)................................................................. 10

*Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury,*
  25 F.3d 237 (5th Cir. 1994)............................................................ 18, 27

*Nordlinger v. Hahn,*
  505 U.S. 1 (1992)................................................................................ 20

*Okpalobi v. Foster,*
  244 F.3d 405 (5th Cir. 2001)................................................... 10, 11, 23

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984).............................................................................. 14

*Quern v. Jordan,*
  440 U.S. 332 (1979)............................................................................ 14

*Raines v. Byrd,*
  521 U.S. 811 (1997).............................................................................. 6

*Ramming v. United States,*
  281 F.3d 158 (5th Cir. 2001)................................................................. 6

*Rice v. Santa Fe Elevator Corp.,*
  331 U.S. 218 (1947)............................................................................ 25

*Rivera v. Wyeth-Ayerst Labs.,*
  283 F.3d 315 (5th Cir. 2002)................................................................. 7

*Rublee v. Fleming,*
  160 F.3d 213 (5th Cir. 1998)............................................................... 16

*Saltz v. Tenn. Dep't of Emp't Sec.,*
  976 F.2d 966 (5th Cir. 1992)............................................................... 14

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.,*
  73 F.3d 546 (5th Cir. 1996)................................................................... 9

*Skelly Oil Co. v. Phillips Petrol. Co.,*
  339 U.S. 667 (1950)............................................................................ 24

*Sonnier v. Quarterman,*
    476 F.3d 349 (5th Cir. 2007) ................................................................. 18

*Spotts v. United States,*
    613 F.3d 559 (5th Cir. 2010) ................................................................... 6

*Tex. State Emps. Union v. Tex. Dep't of Mental Health & Mental Retardation,*
    746 S.W.2d 203 (Tex. 1987) ............................................................ 19, 27

*United States v. Morrison,*
    529 U.S. 598 (2000) ............................................................................ 26

*U.S. Nat'l Bank of Ore. v. Indep. Ins. Agents of Am., Inc.,*
    508 U.S. 439 (1993) ............................................................................ 10

*Va. Bankshares, Inc. v. Sandberg,*
    501 U.S. 1083 (1991) .......................................................................... 23

*Valley Forge Christian Coll. v. Americans United for Separation of Church
& State, Inc.,*
    454 U.S. 464 (1982) .................................................................. 9, 11, 12

*Vaught v. Ocwen Loan Servicing, LLC,*
    No. 5:16-CV-291-DAE, 2016 WL 3647160 (W.D. Tex. June 30, 2016) .................. 28

*Washington v. Davis,*
    426 U.S. 229 (1976) ............................................................................ 18

*Whalen v. Roe,*
    429 U.S. 589 (1977) ............................................................................ 18

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) .............................................................................. 8

*Wyeth v. Levine,*
    555 U.S. 555 (2009) ............................................................................ 25

## Constitutional Provisions

Tᴇx. Cᴏɴsᴛ. art. IV, § 10 ............................................................................ 11

Tᴇx. Cᴏɴsᴛ. art. IV, § 14 ........................................................................ 15-16

U.S. Cᴏɴsᴛ. art. VI, cl. 2 ..................................................................... 22, 24

**Statutes**

H.B. 2167, 2015 Tex. Sess. Law Serv. ch. 360 ................................................................ 2

H.B. 912, 2013 Tex. Sess. Law Serv. ch. 1390 ............................................................... 2

TEX. GOV'T CODE § 423.001-.008 .................................................................................. 11

TEX. GOV'T CODE § 423.002 ........................................................................................... 11

TEX. GOV'T CODE § 423.002(a)(7)-(9) ........................................................................... 21

TEX. GOV'T CODE § 423.002(a)(14) ................................................................... 1, 2, 17, 20

TEX. GOV'T CODE § 423.003-.0045 .......................................................................... 1, 2, 11

TEX. GOV'T CODE § 423.003(a).......................................................................................... 2

TEX. GOV'T CODE § 423.006 ...................................................................................... 2, 11

28 U.S.C. § 1441 ................................................................................................................. 5

**Rules**

FED. R. CIV. P. 12(b)(1) ................................................................................................ 1, 6

FED. R. CIV. P. 12(c) ......................................................................................................... 1

**Other Authorities**

Angela Morris, *Former District Judge Alleges Texas Drone Law Unconstitutional,*
TEX. LAWYER, Apr. 18, 2016.......................................................................................... 19

H.B. 912, Conf. Comm. Version, 83d Leg.,
Reg. Sess. (Tex. 2013) ...................................................................................................... 4

H.B. 912, House Comm. Substitute Version, 83d Leg.,
Reg. Sess. (Tex. 2013) ...................................................................................................... 3

H.B. 912, House Engrossed Version, 83d Leg.,
Reg. Sess. (Tex. 2013) ...................................................................................................... 3

H.B. 912, Senate Comm. Report Version, 83d Leg.,
Reg. Sess. (Tex. 2013) ................................................................. 3

Hearing Minutes, House Comm. on Crim. Jurisprudence, 83d Leg.,
Reg. Sess. (Apr. 19, 2013) ........................................................... 3

Hearing Minutes, Senate Comm. on Agric., Rural Affairs &
Homeland Sec., 83d Leg., Reg. Sess. (May 13, 2013) ................. 3

House Journal, 83d Leg., Reg. Sess., Feb. 25, 2013 ..................... 3

House Journal, 83d Leg., Reg. Sess., May 10, 2013 ..................... 3

House Journal, 83d Leg., Reg. Sess., May 26, 2013 ..................... 4

House Journal, 83d Leg., Reg. Sess., May 27, 2013 ..................... 4

Senate Journal, 83d Leg., Reg. Sess., May 17, 2013 .................. 3-4

Senate Journal, 83d Leg., Reg. Sess., May 26, 2013 ..................... 4

Senate Journal, 83d Leg., Reg. Sess., May 9, 2013 ..................... 3

Defendants State of Texas and Greg Abbott, in his official capacity as Governor of the State of Texas (the "Governor"), move to dismiss all claims asserted by Plaintiff Manuel R. Flores ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c).  In support thereof, Defendants respectfully show the Court as follows:

## **INTRODUCTION**

Through this suit, Plaintiff challenges one exception of the Texas Privacy Act (the "Act") adopted by the Texas Legislature in 2013.  The Act generally prohibits the use of drones to capture images of individuals or real property, subject to certain exceptions.  TEX. GOV'T CODE § 423.003.  Among those exceptions, the Legislature authorized the capture of images of persons or real property within 25 miles of the Texas-Mexico border, which allows law enforcement to fulfill its obligations of safely and effectively patrolling the region (the "Border Exemption").  *Id.* § 423.002(a)(14).

Plaintiff alleges that the Border Exemption violates the Equal Protection Clause, the Supremacy Clause, and "the constitutional Right to Privacy protected by the United States Constitution . . . and the Texas Constitution."  Pl.'s Original Pet. ¶¶ 24-26 (ECF No. 1-3) ("Pet.").  According to Plaintiff, "perhaps 1 million Texans are being treated categorically different from those living in the rest of the State" due to the Border Exemption.  *Id.* ¶ 11.  Plaintiff seeks an injunction against the Border Exemption, as well as declarations that the Border Exemption "facially violates the U.S. Constitution and the Texas Constitution"; that the Border Exemption "has a disparate impact on persons of Mexican national origin and ancestry"; and that "the acts of Defendants violate Flores' constitutional rights."  *Id.* ¶¶ 24-27.

This suit should be dismissed in its entirety.  Plaintiff has not demonstrated that he has suffered any injury in fact or that his purported injuries are fairly traceable to Defendants or likely to be redressed by the requested relief.  Accordingly, Plaintiff lacks standing to bring this suit.  Plaintiff also fails to articulate any plausible constitutional claim entitling him to the relief sought.

## FACTUAL BACKGROUND

### I.   STATUTORY FRAMEWORK

The Texas Legislature considered and adopted the Texas Privacy Act, House Bill 912 ("HB 912"), during its 2013 Regular Session.  The legislation sought to regulate the capturing of images by unmanned aircraft systems ("UAS") or drones within the State.  *See* H.B. 912, 2013 Tex. Sess. Law Serv. ch. 1390.  In relevant part, the Act amended the Texas Government Code to provide that "[a] person commits an offense if the person uses an unmanned aircraft to capture an image of an individual or privately owned real property in this state with the intent to conduct surveillance." Tex. Gov't Code § 423.003(a).  The Act specified certain instances in which the capturing of images with a drone is lawful, including when capturing an image "of real property or a person on real property that is within 25 miles of the United States border." *Id.* § 423.002(a)(14).[1]  The Act contains civil and criminal enforcement mechanisms.  *Id.* §§ 423.003-.0045, 423.006.

The Act received strong support in the Legislature.  Following its filing in the House of Representatives, HB 912 was referred to the Committee on Criminal

---

[1] In 2015, the Legislature revised one exception, and added two others, to Section 423.002.  *See* H.B. 2167, 2015 Tex. Sess. Law Serv. ch. 360.  The 2015 bill did not impact the Border Exemption.

Jurisprudence ("House Committee").  House Journal, 83d Leg., Reg. Sess., Feb. 25, 2013 (22d Day) at 480.  The House Committee held a hearing and later approved a committee substitute of the bill, which included the 25-mile border provision as an exception to the Act's criminal prohibition.  *See* Hearing Minutes, House Comm. on Crim. Jurisprudence, 83d Leg., Reg. Sess. at 2-3 (Apr. 19, 2013);[2] H.B. 912, House Comm. Substitute Version, 83d Leg., Reg. Sess. at 3 (Tex. 2013).[3]  After floor debate, the House adopted HB 912 by a vote of 128 to 11.  House Journal, 83d Leg., Reg. Sess., May 10, 2013 (70th Day) at 3045.  In the House-adopted version of HB 912, the border provision was unchanged from the version approved by the House Committee.  *See* H.B. 912, House Engrossed Version, 83d Leg., Reg. Sess. at 4 (Tex. 2013).[4]

The Senate referred HB 912 to its Committee on Agriculture, Rural Affairs and Homeland Security ("Senate Committee").  *See* Senate Journal, 83d Leg., Reg. Sess., May 9, 2013 (56th Day) at 1723.  The Senate Committee took testimony on HB 912 in a public hearing and subsequently approved HB 912 without any changes from the House-approved bill.  *See* Hearing Minutes, Senate Comm. on Agric., Rural Affairs & Homeland Sec., 83d Leg., Reg. Sess. at 5 (May 13, 2013);[5] H.B. 912, Senate Comm. Report Version, 83d Leg., Reg. Sess. at 2 (Tex. 2013).[6]  During floor debate, the Senate considered and incorporated amendments to HB 912, but none pertaining to the 25-mile border exception.  *See* Senate Journal, 83d Leg., Reg. Sess., May 17, 2013 (61st

---

[2] *Available at* http://www.capitol.state.tx.us/tlodocs/83R/minutes/pdf/C2202013041908301.PDF.
[3] *Available at* http://www.capitol.state.tx.us/tlodocs/83R/billtext/pdf/HB00912H.pdf#navpanes=0.
[4] *Available at* http://www.capitol.state.tx.us/tlodocs/83R/billtext/pdf/HB00912E.pdf#navpanes=0.
[5] *Available at* http://www.capitol.state.tx.us/tlodocs/83R/minutes/pdf/C5052013051313301.PDF.
[6] *Available at* http://www.capitol.state.tx.us/tlodocs/83R/billtext/pdf/HB00912S.pdf#navpanes=0.

Day) at 1941-44, 1956-58.  HB 912 was adopted by the Senate, with amendments, by a vote of 29 to 1.  *See id.* at 1958-59.

A conference committee was formed to resolve the differences between the House and Senate versions of HB 912.  In the version of HB 912 subsequently approved by the conference committee, the 25-mile border exception was moved to a different section of the Act but otherwise was substantively the same as what had been adopted previously by the House and Senate.  *See* H.B. 912, Conf. Comm. Version, 83d Leg., Reg. Sess. at 4 (Tex. 2013).[7]  The House and Senate adopted the conference committee report by near-unanimous votes.  *See* House Journal, 83d Leg., Reg. Sess., May 26, 2013 (82d Day) at 5262 (vote of 140 to 4); Senate Journal, 83d Leg., Reg. Sess., May 26, 2013 (67th Day) at 3816 (vote of 26 to 5).  In connection with the Senate's debate regarding the conference committee report, members explicitly recognized that the 25-mile border exception was intended to allow for the use of drones by law enforcement, not private citizens.  *See* Senate Journal, 83d Leg., Reg. Sess., May 26, 2013 (67th Day) at 3816-18.  The Governor signed the Act into law on June 14, 2013, and it took effect on September 1, 2013.  *See* House Journal, 83d Leg., Reg. Sess., May 27, 2013 (83d Day) at 5441.

## II.  PLAINTIFF'S PETITION

According to Plaintiff, he resides within 25 miles of the Texas-Mexico border along with "perhaps 1 million" other individuals.  Pet. ¶¶ 11, 21.[8]  Plaintiff alleges

---

[7] *Available at* http://www.lrl.state.tx.us/scanned/83ccrs/hb0912.pdf#navpanes=0.

[8] To the extent Defendants cite to Plaintiff's factual allegations, they do so without conceding their veracity.  *See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).

that the Border Exemption allows for "the unfettered acquisition of drone-captured imagery" in this 25-mile area.  *Id.* ¶ 10.  Plaintiff contends that the Border Exception subjects those living in the border area to "patently unequal treatment."  *Id.* ¶ 12.  In addition, Plaintiff asserts that "[t]here appears to be no legitimate law enforcement purpose" behind the Border Exemption and that there is no reason for "so many American citizens and residents, property owners, and others" to be treated "so radically different" from those in other parts of the State.  *Id.* ¶¶ 13, 15.  Plaintiff avers that the Border Exemption "violates equal protection," is preempted by federal immigration law, and infringes on his "constitutional Right to Privacy."  *Id.* ¶¶ 14, 16, 24-26.

Plaintiff does not claim that anyone associated with the State or the general public has captured an image of him or his property utilizing a drone.  At the same time, Plaintiff acknowledges that those who capture images through drones and UAS "should be able to do so as freely throughout the rest of the entire State of Texas" as the 25-mile area around the Texas-Mexico border.  *Id.* ¶ 19.

Plaintiff filed suit against the State of Texas and the Governor in the 341st Judicial District Court of Webb County, Texas, challenging only the Border Exemption.  Because the suit asserted federal constitutional claims, Defendants removed the suit to this Court pursuant to 28 U.S.C. § 1441 (ECF No. 1).

## SUMMARY OF ARGUMENT

Plaintiff's claims should be dismissed.  As an initial matter, Plaintiff fails to allege facts showing that he meets any of the standing requirements necessary to

assert claims regarding the constitutionality of the Border Exemption.  Dismissal is therefore proper under Rule 12(b)(1).  Alternatively, the Court should dismiss Plaintiff's suit pursuant to Rule 12(c) because Plaintiff has not stated any plausible constitutional claims.

## ARGUMENT AND AUTHORITIES

### I.    PLAINTIFF'S SUIT SHOULD BE DISMISSED BECAUSE HE HAS FAILED TO ESTABLISH HIS STANDING TO SUE.

Rule 12(b)(1) authorizes a court to dismiss claims due to lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'"  *Krim v. pcOrder.com, Inc.,* 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998)).  An action may be dismissed pursuant to Rule 12(b)(1) on any of three separate grounds: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Spotts v. United States,* 613 F.3d 559, 565-66 (5th Cir. 2010) (citation and internal quotation marks omitted).  On a Rule 12(b)(1) motion, the party asserting jurisdiction carries the burden of proof to establish jurisdiction.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

Under Article III of the United States Constitution, federal courts possess jurisdiction only over those disputes that constitute cases or controversies.  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  This requires, among other things, that a plaintiff

have standing to assert his or her claims.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "[T]he irreducible constitutional minimum of standing contains three elements."  *Id.*  To have standing, a plaintiff must demonstrate: (1) an injury-in-fact; (2) that the injury is traceable to the defendant's actions; and (3) that the injury will be redressed by a favorable decision.  *Delta Commercial Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council*, 364 F.3d 269, 272 (5th Cir. 2004).  Failure to establish any of these elements deprives the court of jurisdiction.  *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002).

Plaintiff cannot satisfy any of the required elements of standing. Consequently, his claims must be dismissed pursuant to Rule 12(b)(1).[9]

## A.   Plaintiff Cannot Demonstrate the Existence of an Actual, Concrete Injury.

At the outset, Plaintiff lacks standing because he does not allege any concrete, particularized injury and instead relies solely on conclusory, speculative harm.  To satisfy Article III's injury-in-fact requirement, a plaintiff must show that he has suffered an injury that is "'concrete,' 'distinct and palpable,' and 'actual or imminent.'" *Delta Commercial Fisheries Ass'n*, 364 F.3d at 272 (citation omitted); *see also Lujan*, 504 U.S. at 560.  An injury cannot be remote, speculative, conjectural, or hypothetical. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147-50 (2013) (plaintiff cannot establish standing through a "speculative chain of possibilities"); *Lujan,* 504 U.S. at

---

[9] The objection that a federal court lacks subject matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).  To the extent that the Court determines that Defendants' jurisdictional arguments should be included in a motion for judgment on the pleadings pursuant to Rule 12(c) rather than in a Rule 12(b)(1) motion, Defendants hereby incorporate those arguments into their Rule 12(c) motion.

560-61; *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990).  When a plaintiff bases his standing on a predicted future injury, the threatened harm must be "certainly impending." *Clapper*, 133 S. Ct. at 1147-48; *Whitmore,* 495 U.S. at 158.  The mere *possibility* of future injury is insufficient to create standing.  *Clapper*, 133 S. Ct. at 1147; *Whitmore,* 495 U.S. at 158.  Likewise, for an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Lujan,* 504 U.S. at 560 n.1.

In his Petition, Plaintiff asserts that "[h]e has been a public servant and as deserving of having his privacy respected as anyone else in Texas."  Pet. ¶ 19.  He contends that the Border Exemption transforms the 25-mile area around the Texas-Mexico border into a "playground for drone enthusiasts who would otherwise be precluded from filming people in their homes, washing their cars, gardening in their yard, or simply walking on their private property like Plaintiff Flores."  *Id.* ¶ 20.  Plaintiff further alleges that the Border Exemption "may end up serving to help those involved in illicit activities who can now apparently monitor law enforcement and other people on real property in this region with their own drones."  *Id.* ¶ 12.

Plaintiff's allegations fail to support Article III standing.  He does not provide any facts to establish that he is currently suffering injury as a result of the Border Exemption.  Nor does Plaintiff offer evidence to demonstrate that he will suffer any "certainly impending" injury.  *Clapper*, 133 S. Ct. at 1147.  Namely, Plaintiff does not claim that anyone associated with the State—or anyone in the general public, for that matter—has ever captured an image of him or his property utilizing a drone, or that

he would be subject to this type of activity in the future.[10]  And Plaintiff makes no attempt to explain how the Border Exemption has caused harm that affects him in a "personal[,] individual way."  *Lujan,* 504 U.S. at 560 n.1.  Plaintiff is thus left to rely on generalized, speculative allegations about the impact of the Border Exemption on individuals who live near the Texas-Mexico border.  *See, e.g.,* Pet. ¶ 12 (speculating that the Border Exemption "may end up serving to help those involved in illicit activities").  This conjecture does not satisfy Plaintiff's burden.  *See Clapper,* 133 S. Ct. at 1150.

### B.   Plaintiff's Purported Injuries Are Not Traceable to Defendants or Likely to be Redressed by the Relief Sought.

Even if Plaintiff had alleged more than a speculative harm, he still would have to demonstrate that his purported injury is fairly traceable to Defendants and likely to be redressed by a favorable decision.  *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 558 (5th Cir. 1996) ("traceability" requirement asks whether the defendant's conduct "contributes" to the challenged action); *Lujan*, 504 U.S. at 560-61; *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) ("The requirement of actual injury redressable by the court . . . tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences

---

[10] As noted above, the Act's legislative history reflects that the Border Exemption was not intended to allow private individuals to capture images.  *See supra* Factual Background, Section I.  Regardless, Plaintiff cannot establish standing through supposition about the actions of private citizens with respect to him or his property.  *Clapper,* 133 S. Ct. at 1150.

of judicial action." (citations and internal quotation marks omitted)).  Without such showings, this suit represents an impermissible request for an advisory opinion.  *See U.S. Nat'l Bank of Ore. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993).

Traceability and redressability concerns are particularly significant as to claims against state officers in their official capacity.  That is because state officials are appropriate defendants only if they "have 'some connection with the enforcement of the act' in question" or they are "'specially charged with the duty to enforce the statute' and [are] threatening to exercise that duty."  *Okpalobi v. Foster*, 244 F.3d 405, 414-15 (5th Cir. 2001) (en banc) (quoting *Ex parte Young*, 209 U.S. 123, 157-58 (1908)).  The requisite "connection" cannot be "merely the general duty to see that the laws of the state are implemented," but instead must reflect "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."  *Id*. at 416; *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (same).  Unless this connection is established, any relief awarded is "utterly meaningless" because the official has "no power to redress the asserted injuries."  *Okpalobi*, 244 F.3d at 426-27.

In this instance, Plaintiff cannot establish traceability or redressability as to his claims against the Governor.  Plaintiff's Petition avers only that the Governor signed the Act into law and that he is "bound by oath to uphold the Constitution of the United States and the Texas Constitution and to act subject to constitutional constraints."  Pet. ¶¶ 3, 8.  All of that may be true; but it does not suffice to establish standing to sue the Governor.  *Okpalobi,* 244 F.3d at 416.  Plaintiff must point to more than simply the Governor's generalized duty to see that state laws are faithfully

10

executed.  *See* TEX. CONST. art. IV, § 10; *Okpalobi*, 244 F.3d at 416.  Instead, Plaintiff must show the Governor has the right to enforce the Border Exemption and has demonstrated a willingness to do so. *Okpalobi*, 244 F.3d at 416.  Plaintiff cannot meet that burden because the Act does not confer upon the Governor any unique enforcement authority over its provisions.  *See* TEX. GOV'T CODE §§ 423.001-.008.[11] Accordingly, Plaintiff lacks standing to assert claims against the Governor.

Plaintiff also fails to establish redressability because he cannot demonstrate that invalidating one exception to the Act would result in favorable relief.  *See Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982).  At most, Plaintiff can complain that he or his property may be photographed via a drone one day because he lives within 25 miles of the border between Texas and Mexico.  Yet, even if Plaintiff obtained the requested declarations, Plaintiff or his property could still be photographed under the Act's other exemptions.  *See* TEX. GOV'T CODE § 423.002.

### C.    Prudential Considerations Counsel Against Plaintiff's Standing.

Prudential considerations also bear on standing.  These considerations include "whether [a] complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999); *see Valley Forge*, 454 U.S. at 474-75.  A "common thread" underlying the

---

[11] The Act authorizes individuals to bring a civil action against a person who captures an image in violation of the Act.  *See* TEX. GOV'T CODE § 423.006.  But this provision—as with the sections of the Act creating criminal offenses for certain conduct, *id.* §§ 423.003-.0045—does not mention the Governor or otherwise reflect that the Governor has any role in its enforcement.

standing analysis is that a person must "show[ ] that he himself is injured by [the challenged law's] operation." *Barrows v. Jackson*, 346 U.S. 249, 255 (1953).

In this case, Plaintiff tries to support his claims by pointing to harms purportedly suffered by individuals who are not before the Court in this lawsuit. *See, e.g.*, Pet. ¶ 11 ("[P]erhaps 1 million Texans are being treated categorically different from those living in the rest of the State."); *id.* ¶ 17 (referencing the "privacy of Texas residents of Mexican descent and national origin as well as others who live or have property as far away as 25 miles from the border"). These arguments raise serious prudential concerns. To begin, Plaintiff cannot establish his standing by identifying injuries allegedly suffered by third parties. *See Barrows*, 346 U.S. at 255. What is more, Plaintiff's allegations present "abstract questions of wide public significance" that amount to generalized grievances about the manner in which the Legislature has permitted the capturing of images by drones in the State. *Valley Forge*, 454 U.S. at 474-75 (citation and internal quotation marks omitted). Whether these arguments make for a spirited policy debate is not for the Court to decide; what matters is whether they create a "case or controversy" over which this Court has jurisdiction. *Id.*; *Ass'n of Cmty. Orgs. for Reform Now*, 178 F.3d at 363. Plaintiff's dispute does not satisfy that threshold and instead is "most appropriately addressed in the representative branches." *Valley Forge*, 454 U.S. at 475.

## II.   ALTERNATIVELY, PLAINTIFF'S PETITION SHOULD BE DISMISSED FOR FAILING TO ASSERT ANY VIABLE CONSTITUTIONAL CLAIMS.

Federal Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the

substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam).  When deciding a Rule 12(c) motion, a court utilizes the same standard as a Rule 12(b)(6) motion.  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

To avoid dismissal under Rule 12(b)(6) or 12(c), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A court assesses the motion "only on the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (citation and internal quotation marks omitted).  In doing so, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," *Martin K. Eby Constr.*, 369 F.3d at 467 (citation and internal quotation marks omitted), but need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions," *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citations and internal quotation marks omitted).  A plaintiff cannot rely merely on "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original) (citations and internal quotation marks omitted).  Rather, a plaintiff must provide enough facts to "nudge[ ] [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Plaintiff has not alleged sufficient facts to state any viable claims for relief. To the contrary, Plaintiff relies on vague, unadorned allegations that do nothing to establish the plausibility of his claims. This suit should be dismissed.

## A.    The Governor Is Immune from Liability for *Ultra Vires* Claims.

In his Petition, Plaintiff indicates that he has named the Governor as a defendant because his act of signing HB 912 into law was "without legal authority." Pet. ¶ 23. Plaintiff's attempt to assert an *ultra vires* claim against the Governor is barred by the Eleventh Amendment. Absent a waiver of immunity by a state or through a federal statute, the Eleventh Amendment protects states from suit in federal court regardless of the remedy sought. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-01 (1984); *Quern v. Jordan,* 440 U.S. 332, 337 (1979). Eleventh Amendment immunity extends to state officials named in their official capacity because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents." *Kentucky v. Graham,* 473 U.S. 159, 169 (1985) (internal quotation marks and citations omitted).

In certain instances, state officials may be sued in their official capacities in challenges to the constitutionality of state action. *See Young*, 209 U.S. at 155-56. But the relief sought "must be declaratory or injunctive in nature and prospective in effect." *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). This exception does not allow for the recovery of *retrospective* relief against a state official. *Edelman v. Jordan,* 415 U.S. 651, 663-70 (1974). The plaintiff thus must identify an ongoing violation of federal law, rather than merely pointing to one's prior conduct.

14

*See Green v. Mansour*, 474 U.S. 64, 71-73 (1985) (rejecting issuance of declaration that a state official previously violated federal law).

Although Defendants may have waived their immunity *from suit* by removing this case to federal court, that removal does not waive Defendants' immunity *from liability*, which they would enjoy if the suit had remained in state court. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 254-55 (5th Cir. 2005). The Uniform Declaratory Judgment Act ("UDJA")—the foundation of this suit—is not a general waiver of the State's immunity from liability. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370-73 (Tex. 2009) (recognizing the UDJA "does not enlarge a trial court's jurisdiction"). Nor, under the circumstances, can Plaintiff look to *Heinrich* and the *ultra vires* exception to sovereign immunity recognized there. *See* Pet. ¶ 23. In *Heinrich*, the court found that a plaintiff may defeat a state officer's immunity from equitable relief by asserting that the officer is failing "to comply with statutory or constitutional provisions." *Heinrich*, 284 S.W.3d at 372. *Heinrich* made clear, however, that an *ultra vires* action "must not complain of a government officer's exercise of discretion" and instead "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* (citations omitted). It is not enough to show that an official "reached an incorrect or wrong result when exercising [his] delegated authority." *Creedmor-Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality*, 307 S.W.3d 505, 517-518 (Tex. App.—Austin 2010, no pet.).

In this case, Plaintiff focuses on actions taken by the Governor pursuant to his constitutional authority to sign bills passed by the Legislature. TEX. CONST. art. IV,

§ 14.  According to Plaintiff, the Governor's signing of the Act violated Plaintiff's rights.  Pet. ¶ 23.  At its core, then, Plaintiff complains that the Governor reached an incorrect decision while exercising his constitutional authority.  That is insufficient to state a viable *ultra vires* claim.  *See Heinrich*, 284 S.W.3d at 372.  Accordingly, the Governor retains his sovereign immunity from liability for *ultra vires* claims, and any such claims against him must be rejected pursuant to Rule 12(c).

### B.    Plaintiff Has Not Stated an Actionable Equal Protection Claim.

The Court also should dismiss Plaintiff's equal protection claim.  In an equal protection challenge, a party must first identify the classification or fundamental right at issue.  This showing determines the level of scrutiny that a court will apply.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).  If the challenged law treats similarly situated persons differently based on a suspect class— *i.e.*, race, religion, or national origin—or infringes on a fundamental right, strict scrutiny applies.  *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998) (per curiam).  Otherwise, the court utilizes a rational basis review, under which the law is "presumed to be valid" and will be sustained as long as the classification "is rationally related to a legitimate state interest."  *City of Cleburne*, 473 U.S. at 440.  To overcome this presumption, a plaintiff must negate "*every conceivable basis* which might support" the challenged provision—whether or not the rationale has any foundation in the legislative record.  *Heller v. Doe*, 509 U.S. 312, 320-21 (1993) (emphasis added) (citation and internal quotation marks omitted).

16

### 1. Plaintiff fails to identify a suspect classification or fundamental right.

As an initial matter, Plaintiff has not established that the Border Exemption discriminates against a suspect class or interferes with a fundamental right. To the contrary, the Border Exemption classifies on the basis of one attribute, geography— that is, the location of one's person or property. *See* TEX. GOV'T CODE § 423.002(a)(14). Individuals are subject to the Border Exemption if they are within 25 miles of the Texas-Mexico border, regardless of their national origin or any other protected characteristic. Plaintiff cannot contend otherwise. Instead, he explicitly acknowledges that the challenged provision distinguishes individuals based on their physical location. *See* Pet. ¶¶ 11, 16 (asserting that the Border Exemption "target[s] these geographic areas" and that, as a result, "perhaps 1 million Texans are being treated categorically different from those living in the rest of the State").

Plaintiff alleges that strict scrutiny should apply to the Border Exemption because the provision "either intentionally or as a matter of disparate impact targets a 'suspect' category, specifically including persons of Mexican ancestry." Pet. ¶ 18 (citations omitted). Not so. To begin with, Plaintiff's conclusory claim about the Legislature's intentional targeting of "a 'suspect' category" finds no support in the text of the Border Exemption. Moreover, Plaintiff admits that the legislative history of the Border Exemption does not corroborate his accusations of intentional discrimination. *See* Pet. ¶ 12. Nor are Plaintiff's allegations of the Border Exemption's "disparate impact" sufficient to require strict scrutiny of the provision. Even assuming Plaintiff offered something more than unsubstantiated allegations on

17

this point (he does not), disparate impact cannot sustain an equal protection challenge without a showing of discriminatory purpose. *See Washington v. Davis,* 426 U.S. 229, 246-50 (1976).[12]  In the end, Plaintiff's argument that the Border Exemption must survive strict scrutiny reflects "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original) (citation and internal quotation marks omitted).

Plaintiff also contends that strict scrutiny should apply because the Border Exemption implicates "the fundamental right of privacy" under the United States and Texas Constitutions.  Pet. ¶ 18.  This contention must be rejected.  The United States Supreme Court "has explained that fundamental rights, for equal protection purposes, are such rights as: a right of a uniquely private nature, the right to vote, right of interstate travel and rights guaranteed by the First Amendment." *Sonnier v. Quarterman*, 476 F.3d 349, 368 n.16 (5th Cir. 2007) (citation omitted).  A federal constitutional right to privacy is "largely undefined" but generally embraces two strands of interests—one's interest in "avoiding disclosure of personal matters," *Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 25 F.3d 237, 242 (5th Cir. 1994) (citation and internal quotation marks omitted), and the interest in "independence in making certain kinds of important decisions," *Whalen v. Roe*, 429 U.S. 589, 598-600 (1977).  In his Petition, Plaintiff makes only conclusory references

---

[12] *See also Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) ("[A] party who wishes to make out an Equal Protection claim must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury." (internal quotation marks and citations omitted)).

to a generalized "right to privacy"; he provides no elaboration or factual support.[13] The Court therefore cannot determine what specific right is at issue, the right's textual source, and whether or how the right has been infringed. As such, Plaintiff has not shown that the Border Exemption infringes on a fundamental right or that strict scrutiny should otherwise apply.[14]

## 2. Plaintiff offers no facts to suggest that the Border Exemption would fail rational basis review.

Because he cannot identify a suspect classification or fundamental right, the Border Exemption is subject to rational basis review. Applying this standard, Plaintiff has not stated a viable equal protection claim. This is so for three independent reasons. First, Plaintiff's equal protection claim rests on unsupported "labels and conclusions," while offering no evidence that would allow the Court to conclude the Border Exemption would not satisfy rational basis review. *Twombly*, 550 U.S. at 555. Plaintiff thus has not "nudge[d] [his] claims across the line from conceivable to plausible." *Id.* at 570. That alone is reason enough to dismiss Plaintiff's equal protection claim.

---

[13] Plaintiff's "right to privacy" claim is especially perplexing because he concedes that one should be able to capture images from drones "as freely throughout the rest of the entire State of Texas" as the 25-mile area around the Texas-Mexico border. Pet. ¶ 19. News reports similarly reflect that Plaintiff is "not excessively concerned about his privacy," so long as the border area is treated the same as other parts of the State. Angela Morris, *Former District Judge Alleges Texas Drone Law Unconstitutional*, TEX. LAWYER, Apr. 18, 2016, *available at* http://www.texaslawyer.com/id=1202755222473/Former-District-Judge-Alleges-Texas-Drone-Law-Unconstitutional (last visited July 25, 2016).

[14] So too for Plaintiff's reliance on a "right to privacy" under the Texas Constitution. Whether or not state-based privacy claims are assessed under a strict scrutiny standard—some Texas Supreme Court cases suggest this standard in certain instances—is beside the point. *See, e.g.*, *Tex. State Emps. Union v. Tex. Dep't of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1987). Because Plaintiff does not offer one fact to demonstrate that he has suffered an "unreasonable intrusion" on his privacy, the Court cannot find that Plaintiff has adequately stated any constitutional claims. *Id.*

Second, Plaintiff does not identify any equally situated individuals being treated differently from him.  Yet, that showing is critical because Plaintiff must demonstrate that the government is according disparate treatment to "persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  Indeed, "most laws differentiate in some fashion between classes of persons," and the Equal Protection Clause "does not forbid classifications" entirely.  *Id*.  Here, the Border Exemption treats Plaintiff the same as others in a similar position—specifically, anyone who resides within 25 miles of the Texas-Mexico border. TEX. GOV'T CODE § 423.002(a)(14).  Plaintiff offers nothing to demonstrate that he is "in all relevant respects alike" to persons who reside outside the provision's 25-mile area.  *See Nordlinger*, 505 U.S. at 10.

Third, even if Plaintiff could point to similarly situated individuals being treated differently from him, he would be unable to satisfy his burden of overcoming the presumption that the Border Exemption is valid.  *See Heller*, 509 U.S. at 320; *McGowan v. Maryland*, 366 U.S. 420, 425-26 (1961) ("State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.").  The needs of law enforcement, for example, are one conceivable basis for the provision.  That is, law enforcement officers patrolling the border region are regularly presented with unique challenges not encountered in the rest of the State—*e.g.*, patrolling swaths of uninhabited land regularly traversed by drug, weapon, and human smugglers.[15]  The Border Exemption allows these officers

---

[15] A set of facts unique to the border region illustrates this point.  An officer receives an anonymous tip that a group of people has been seen walking through an uninhabited area within 25 miles of the

to safely and effectively patrol the region by utilizing drones.[16]  Contrary to Plaintiff's contention, the exceptions in Section 423.002(a)(7)-(9) are more restrictive and thus do not negate this rational basis.[17]  Plaintiff himself recognizes that the Border Exemption could be related to a law enforcement interest.  Pet. ¶ 12 ("Perhaps the Legislature wanted people with drones to be able to monitor the Border Patrol's movements to ensure proper discharge of their duties enforcing the laws or the efforts of those (whether it be people or drugs from Mexico into Texas or firearms or cash into Mexico).").  In any event, Plaintiff cannot meet his burden to establish an equal protection violation, and his claim therefore must be dismissed.[18]

### C.    Plaintiff Cannot Establish a Preemption Claim.

The Court should similarly dispose of Plaintiff's conclusory claim that the Border Exemption "is contrary to . . . the Supremacy Clause."  Pet. ¶ 25.  Plaintiff not only lacks a right of action to assert a Supremacy Clause claim, but he also fails to offer any facts to state a viable claim against Defendants.

---

border carrying what appear to be large objects covered in burlap.  He suspects based upon his experience that the objects are bundles of contraband, but he lacks reasonable suspicion or probable cause because it is unclear exactly what the group is doing and he lacks first-hand knowledge about the objects.  Under the Border Exemption, the officer could utilize a drone to safely and efficiently locate and investigate the group to dispel his suspicion or develop probable cause.  If this scenario occurred outside of the border context, none of the exceptions under Section 423.002 would apply.

[16] That the Border Exemption *may*, on its face, permit the use of drones by private citizens around the border is not sufficient to render the provision unlawful.  A plaintiff must prove more than a mere "imperfect fit between means and ends."  *Heller*, 509 U.S. at 321.

[17] *See* TEX. GOV'T CODE 423.002(a)(7)-(9) (specifying that law enforcement may use drones in certain limited instances, including pursuant to a valid search or arrest warrant, based upon probable cause, in hot pursuit of a fleeing suspect, in the investigation of a crash site resulting in death or serious injury, or in the course of conducting high-risk tactical operations).

[18] To the extent Plaintiff asserts an equal protection claim under the Texas Constitution, the same result occurs.  *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 638 (Tex. 2008) ("'[T]he federal analytical approach [to the Equal Protection Clause under the United States Constitution] applies to equal protection challenges under the Texas Constitution.'" (first alteration in original) (quoting *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002)).

### 1.    Plaintiff lacks a right of action to support his Supremacy Clause claim.

Initially, Plaintiff's claim that the Border Exemption is preempted by federal law fails because he lacks a private right of action to assert it. All preemption cases like this one turn on the effect of the Supremacy Clause, U.S. CONST. art. VI, cl. 2. *See generally Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378 (2015). But for a court to reach the merits of preemption on a plaintiff's claims under the Supremacy Clause, he must demonstrate not only federal subject matter jurisdiction but also a private right of action. *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979). So even when a federal court has jurisdiction to hear a case, if a plaintiff sues pursuant to a constitutional provision that does not contain a right of action, the court must dismiss the claim. *See Armstrong*, 135 S. Ct. at 1383-84.

The problem with Plaintiff's preemption claim is that the Supremacy Clause does not furnish a right of action. The Supreme Court said so in *Armstrong*, where it concluded that the Supremacy Clause establishes a mere "rule of decision," not a freestanding right of action. 135 S. Ct. at 1383. Read simply, the Court held, the clause "instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court." *Id.* at 1383-84.

Nor does equity provide Plaintiff with a right of action to assert a preemption claim. Although the Supreme Court has said plaintiffs can sometimes proceed in equity to enjoin allegedly unconstitutional actions by state officers, *see Armstrong*, 135 S. Ct. at 1384, this line of cases—led by *Ex parte Young*—does not help Plaintiff. *Young* can only be invoked when the state officers responsible for enforcing the

challenged statute "threaten and are about to commence proceedings." *Young*, 209 U.S. at 155-56.  Moreover, plaintiffs' ability to seek injunctive relief requires them to show not only an actual threat of enforcement, but also an "irreparable loss" that would be "both great and immediate." *Fenner v. Boykin*, 271 U.S. 240, 243 (1926). Plaintiff's Petition contains no claim that any Texas official has ever captured an image of him or his property as a result of the Border Exemption, or even threatened to do so.  At most, Plaintiff's grievances reflect a concern that certain activity *may* occur in the future; mere fear, though, is not enough for the Court to exercise its equitable powers to enjoin the Border Exemption.  *See Okpalobi*, 244 F.3d at 415.

Plaintiff does not have a statutory right of action either.  "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  A statute may expressly authorize suit, or a private right of action may be implied if Congress intended to create a private right and a remedy for its violation.  *Id.* at 286-87; *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991) ("[R]ecognition of any private right of action for violating a federal statute must ultimately rest on congressional intent to provide a private remedy.").  Without evidence of congressional intent to create a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander*, 532 U.S. at 287.  Here, no statute gives Plaintiff a right of action. The only possible candidate—the federal Declaratory Judgment Act—is merely a procedural device for cases already within a court's jurisdiction and does not supply

23

a separate cause of action. *See Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950); *Harris Cnty., Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552-53 (5th Cir. 2015). As a result, there is no statutory basis for Plaintiff's preemption claim.

### 2. Even if Plaintiff has a right of action for his preemption claim, he has not alleged facts to state a viable claim.

In support of his Supremacy Clause claim, Plaintiff asserts that the Border Exemption "cannot [be] justif[ied] . . . based on some State 'immigration policy' because the law is clear that the Federal Government is preeminent in the area of immigration." Pet. ¶ 14. That is the extent of Plaintiff's factual allegations supporting his Supremacy Clause claim. The Court need not tarry long to dispose of this claim.

Pursuant to the Supremacy Clause, federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Accordingly, it is a "fundamental principle of the Constitution . . . that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

Courts have generally recognized three classes of preemption. The first category, express preemption, occurs when a federal statute explicitly preempts state law on the same subject. *Arizona v. United States*, 132 S. Ct. 2492, 2500-01 (2012). The second category, field preemption, arises when Congress has determined that a field "must be regulated by its exclusive governance." *Id.* at 2501. Congressional intent to displace state law from a particular field "can be inferred from a framework

24

of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where there is a federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (alterations in original) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  The third category, conflict preemption, provides that state laws are preempted to the extent of any conflict with a federal statute.  *See id.*; *Crosby*, 530 U.S. at 372.  This includes circumstances "where 'compliance with both federal and state regulations is a physical impossibility,'" *Arizona*, 132 S. Ct. at 2501 (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)), and "where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

Two "cornerstones" guide the preemption analysis.  *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  First, "'the purpose of Congress is the ultimate touchstone in every pre-emption case.'"  *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  Second, any preemption analysis begins with "'the assumption that the historic police powers of the States were not to be superseded by [federal law] unless that was the clear and manifest purpose of Congress.'"  *Id.* (quoting *Medtronic*, 518 U.S. at 485).

Plaintiff's preemption claim has no merit.  As a threshold matter, it proceeds on the flawed premise that Defendants seek to justify the Border Exemption "based on some State 'immigration policy.'"  Pet. ¶ 14.  To be clear, Defendants do *not* rely on "immigration policy" to support the Border Exemption.  Rather, the State's regulation of drones—including the Border Exemption—derives from its traditional

25

power to adopt laws protecting the safety, health, and welfare of the public.  *See Medtronic*, 518 U.S. at 475 (recognizing that states maintain "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons" (citation and internal quotation marks omitted)); *see also United States v. Morrison*, 529 U.S. 598, 618 (2000).

This is not simply a pleading defect that can be resolved through an amended complaint.  Plaintiff cannot establish under any circumstance that the Border Exemption is preempted by federal law.  For one thing, Plaintiff does not, and cannot, contend that Congress has expressly preempted states from enacting restrictions on the use of drones within their borders.  Nor can Plaintiff possibly carry his burden to prove that the Border Exemption is field preempted by federal law—*i.e.*, that Congress, through federal immigration laws, clearly and unambiguously effected a "complete ouster of state power[,] including state power to promulgate laws not in conflict with federal laws."  *DeCanas v. Bica*, 424 U.S. 351, 357 (1976) (citations and internal quotation marks omitted).  Plaintiff's silence on this point is unsurprising, given the State's traditional police powers and the core concern of federal immigration law to regulate the "terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country"—an interest that is far afield from the regulation of drones within a state's borders.  *Id.* at 359; *see also Arizona*, 132 S. Ct. at 2502-07.  Likewise, Plaintiff cannot demonstrate that the Border Exemption conflicts with federal law—in other words, that the provision makes compliance with federal and state regulations a "physical impossibility'" or

26

otherwise obstructs any congressional purposes or objectives.  *Arizona*, 132 S. Ct. at 2501.  Plaintiff's Supremacy Clause claim must be dismissed.

### D.    Plaintiff Has Not Stated a Right to Privacy Claim.

Nor has Plaintiff pleaded a viable claim that the Border Exemption infringes on "the constitutional Right to Privacy protected by the United States Constitution . . . [and] the Texas Constitution against arbitrary acts by the government."  Pet. ¶¶ 25-26.  Plaintiff's threadbare allegations offer no detail about the nature of this claim or the precise source from which the claim purportedly derives.  If Plaintiff relies on an interest in "avoiding disclosure of personal matters," *Nat'l Treasury Emps. Union*, 25 F.3d at 242, he supplies no facts that would call for extending a right of privacy to the wide-ranging scope of activities about which Plaintiff raises concerns in his Petition, *see* Pet. ¶ 20; *supra* Argument & Authorities, Section II.B.1.  The same is true for Plaintiff's reliance on the Texas Constitution, as his conclusory assertions do nothing to demonstrate that he has been subjected to an "unreasonable intrusion" on his privacy.  *See Tex. State Emps. Union*, 746 S.W.2d at 205; *supra* n.14.

To the extent Plaintiff's right to privacy claim includes a substantive due process component, that contention falls flat as well.  As a first step, a due process claim requires a plaintiff to demonstrate that he has been deprived of a constitutionally protected liberty or property interest.  *See, e.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).  Yet, Plaintiff offers no facts that suggest the Border Exemption somehow deprives him of a protected interest.  Moreover, he provides no legal or factual basis for the Court to find—as it must for a substantive

due process claim—that Defendants acted in an "arbitrary, wrongful" manner or engaged in "egregious official conduct." *Marco Outdoor Adver., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 672 n.3 (5th Cir. 2007) (citations and internal quotation marks omitted).

At bottom, Plaintiff's privacy claim presents "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. The claim must be dismissed pursuant to Rule 12(c).[19]

## CONCLUSION

The Court should grant this Motion and dismiss Plaintiff's claims with prejudice.

---

[19] The Fifth Circuit recently held that the federal pleading standard—not the applicable state's standard—applies to removed cases when evaluating whether an improper joinder has occurred. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 207-08 (5th Cir. 2016). Regardless of whether this approach applies to motions to dismiss generally, the Texas pleading standard now generally tracks the federal standard. *See Vaught v. Ocwen Loan Servicing, LLC*, No. 5:16-CV-291-DAE, 2016 WL 3647160, at *2 (W.D. Tex. June 30, 2016) (applying federal pleading standard); *Mastronardi v. Wells Fargo Bank*, No. 15-11028, 2016 WL 3549007, at *1 (5th Cir. June 29, 2016) (per curiam) (concluding that Texas's revised pleading standard "now tracks the federal standard").

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Division Chief, General Litigation Division


/s/   *Adam N. Bitter*
ADAM N. BITTER
Attorney-in-Charge
Assistant Attorney General
Tx. State Bar No. 24085070
Southern District of Texas No. 2167538
Office of the Attorney General
General Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548
Tel: (512) 475-4651; Fax: (512) 320-0667
adam.bitter@texasattorneygeneral.gov
*Counsel for Defendants*

29

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of July, 2016, the foregoing *Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and Motion for Judgment on the Pleadings Pursuant to Rule 12(c)* was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorney(s) and/or parties of record, via the CM/ECF service and/or via electronic mail.

<u>/s/   *Adam N. Bitter*          </u>
ADAM N. BITTER
Assistant Attorney General